United States District Court
for the
Southern District of Florida

| Flexstake, Inc., Plaintiff, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Civil Action No. 17-20858-Civ-Scola |
| | ) | |
| DBI Services, LLC, Defendant. | ) | |

**Opinion Order Granting Defendant's
Motion for Summary Judgment and Dismissing Case**

This dispute relates to Defendant DBI Services, LLC's ("DBI") use of generic plastic posts to service and maintain express lane delineators manufactured by Plaintiff Flexstake, Inc. ("Flexstake") that were installed along I-95 in Miami-Dade County, Florida.

Before the Court is a motion for summary judgment filed by DBI. (the "Motion," ECF No. 104.) Having considering the parties' written submissions and accompanying exhibits, and the applicable law, the Court **grants** the Motion (ECF No. 104) and **dismisses** this case with prejudice for the reasons that follow.

**1. Background**

**A. The Material[1] Undisputed Facts**

Flexstake manufactures and sells lane delineators ("Delineator") for use on highways. (ECF No. 106, 111 at ¶¶ 1.) Flexstake owns the federally registered word mark "Flexstake." (ECF Nos. 103, 106 at ¶¶ 4.) The Delineator consists of: a base, a vertical plastic post ("Flexstake Post"), an insert to connect the two, and a hinge. (*Id.* at ¶¶ 3; ECF Nos. 103, 106 at ¶¶ 2.) Beginning in 2008, Flexstake furnished Delineators for use on I-95 express lanes in Miami-Dade County, Florida. (ECF Nos. 106, 111 at ¶¶ 12.)

DBI is a corporation that provides highway operations and maintenance services to public entities. (ECF Nos. 103, 106 at ¶¶ 6.) In 2014, DBI entered into an Asset Maintenance Contract with the Florida Department of Transportation ("FDOT") to maintain all assets within FDOT's right of way in Miami-Dade

---

[1] A fact is "material" for summary judgment purposes if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

County, including the service or replacement of damaged or missing Delineators on I-95. (*Id.* at ¶¶ 7.)

The Delineators and accompanying Flexstake replacement parts were consistently purchased for use on I-95 in Miami-Dade County from 2009 to October 2014. (*Id.* at ¶¶ 23.) Later, DBI replaced worn down Delineator Posts with generic posts that were not manufactured by Flexstake ("Generic Posts"), and installed the Generic Posts onto existing Flexstake Delineator bases and hinges on I-95. (ECF Nos. 106, 111 at ¶¶ 30, 31.) The Generic Posts did not contain any markings, logos or words indicating that Flexstake manufactured them. (ECF Nos. 103, 106 at ¶¶ 12.) The Generic Posts performed poorly. (ECF Nos. 106, 111 at ¶¶ 35.)

In 2016, FDOT adopted a specification[2] for the performance of lane delineators used on I-95, which required any lane delineators used on Florida highways to be tested by a recognized testing facility that is accredited to crash test roadway safety devices. (ECF Nos. 103, 106 at ¶¶ 24.) The Delineator did not meet the new FDOT specifications and was never tested by an accredited facility, and therefore was precluded from continued use by DBI on I-95. (*Id.* at ¶¶ 25, 27; ECF No. 105-1 at ¶ 30.)

### B. Course of Proceedings

Flexstake asserts three claims in its Amended Complaint: (1) Count I for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, (ECF No. 30 at ¶¶ 38-31); (2) Count II for common law unfair competition, (*id.* at ¶¶ 32-36); and (3) Count III for violations of the Lanham Act, 28 U.S.C. § 1125(a), (*id.* at ¶¶ 37-41).

---

[2] These specifications were promulgated based on a technical memorandum created by the Texas A&M Transportation Institute ("TTI"), which in turn was based on tests of certain Delineators sent to it by DBI. The parties dispute whether DBI sent Flexstake Posts or Generic Posts. That issue, however, is not material to the Court's decision and, in any event, Flexstake has not proffered any evidence, let alone a "scintilla" of evidence, that DBI actually sent Generic Posts to TTI, with exception of the unqualified and improper expert opinion of Flexstake's president. (*See* ECF No. 105-1 at ¶ 24); *see also* Fed. R. Civ. P. 56(c)(1)(B); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (holding there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. . . . One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

DBI seeks summary judgment in its favor on all three claims, arguing: (1) that there is no admissible evidence that DBI sent Generic Posts to TTI, which, in any event, was not the proximate cause of Flexstake's damages because the Delineator did not meet FDOT's specifications; (2) there is no dispute of material fact that DBI did not "use" Flexstake's mark or one confusingly similar to it; (3) Flexstake cannot show FDOT or TTI ever saw a Generic Post and therefore cannot show DBI used Flexstake's mark in a manner likely to cause consumer confusion; and (4) in the alternative, Flexstake is prohibited from recovering lost profits under 15 U.S.C. § 1111. (ECF No. 104.)

**2. Legal Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 249. The Court will not weigh the evidence or make findings of fact. *Id.*; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

**3. Analysis**

**A. Flexstake Does Not Seek Actual Damages Under FDUTPA**

In Count I, Flexstake asserts that DBI violated the FDUTPA by "manufacturing and selling a knock-off" stake "designed to deceive the State of Florida and other consumers into believing that the knock-off is a genuine

Flexstake TM 750 series delineator, and by installing said product into the Flexstake TM 750 base and hinge, thereby passing it off as a genuine Flexstake product." (ECF No. 30 at ¶ 30.) Flexstake generally concludes that it was "damaged" as a result of that conduct. (*Id.* at ¶ 31.) In opposition to the Motion Flexstake elaborated on its damage theory, arguing that its FDUTPA claim seeks recovery of "lost profits, damage to reputation and other adverse consequences" resulting from the "publication of the Technical Memorandum" and "the negative publicity, poor performance and unsightly appearance that resulted from the use of counterfeit top sections [i.e. the Generic Posts]" on I-95. (ECF No. 107 at p. 14.) In response, DBI correctly argues that none of those damage theories are recoverable under FDUTPA. (ECF No. 112 at p. 6.)

The elements of a cause of action under FDUTPA are "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (affirming summary judgment for Defendant where FDUTPA plaintiff "made no allegation and presented no evidence" of an element of the claim). With respect to the third element, "[p]roof of actual damages is necessary to sustain a FDUTPA claim." *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 1340, 1352 (S.D. Fla. 2017) (Moore, C.J.) (quoting *Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 824 (Fla. 4th DCA 2010)). "FDUTPA 'actual damages' do not include consequential damages." *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-cv-81062, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) (Middlebrooks, J.) (quoting *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008)).

"Lost profits are a 'quintessential example' of consequential damages" and are not recoverable under FDUTPA. *Id.* at **5-6 (dismissing FDUTPA claim and holding that "lost profits are consequential damages, and, thus, not recoverable under FDUTPA.") (citing *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987)); *see also* *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012) (Seitz, J.) ("It remains well-settled in Florida that consequential damages in the form of lost profits are not recoverable under FDUTPA.").

Nor are reputational harm or "stigma damages" recoverable under FDUTPA. *See Casa Dimitri*, 270 F. Supp. 3d at 1352 (dismissing FDUTPA claim where plaintiff's "harmed goodwill" damage theory was consequential and "expressly not recoverable under the FDUTPA"); *Krupa v. Platinum Plus, LLC*, No. 8:16-cv-3189-T-33MAP, 2017 WL 1050222, at *7 (M.D. Fla. Mar. 20, 2017) (same); *BPI Sports, LLC v. Labdoor, Inc.*, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016) (Bloom, J.) (dismissing FDUTPA claim where plaintiff's allegations of "competitive harm, diverted or lost sales, and harm to the goodwill and reputation" of plaintiff were improper consequential damages); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 870 (Fla. 2d DCA 2006) ("the recovery afforded under

FDUTPA does not include diminution in value or stigma damages"); *Clear Marine Ventures, Ltd. v. Brunswick Corp.*, No. 08-22418, 2010 WL 528477, at **3-4 (S.D. Fla. Feb. 11, 2010) (Torres, Mag. J.) (same).

Flexstake's FDUTPA claim seeks recovery of "lost profits, damage to reputation and other adverse consequences"—all theories of consequential damages. (ECF No. 107 at pp. 14-15); *see, e.g., Five for Entm't*, 877 F. Supp. 2d at 1331; *Casa Dimitri*, 270 F. Supp. 3d at 1352; *Rollins, Inc.*, 951 So. 2d at 870. Because Flexstake is not pursuing "actual damages," its FDUTPA claim fails and DBI is entitled to judgment as a matter of law. *Diversified Mgmt.* 2016 WL 4256916, at *5; *Casa Dimitri*, 270 F. Supp. at 1352. Accordingly, the Court grants summary judgment to DBI on Count I.

### B. DBI Did Not Use the Flexstake Mark or One Confusingly Similar

Flexstake's remaining two claims, unfair competition under Florida law and 15 U.S.C. § 1125(a) of the Lanham Act, are premised on the same underlying theory: that DBI "passed off" the Generic Posts as Flexstake Posts, causing confusion to consumers as to the origin of the Delineator. (ECF No. 30 at ¶¶ 32-41.) DBI argues it is entitled to summary judgment on both claims because there is no dispute of material fact that Flexstake's mark was not "used" on the Generic Posts. (ECF No. 104 at pp. 8-10.) The Court agrees.

The Court will analyze Counts II and III under the Lanham Act, as "[c]ourts may use an analysis of federal infringement claims [under the Lanham Act] as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001); *see also MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*, 2013 WL 3288039, at *16 (S.D. Fla. June 28, 2013) (O'Sullivan, Mag. J.) (where a plaintiff "fail[s] to establish a claim for federal trademark infringement and unfair competition, related state law claims likewise fail.") (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1991)).

The Lanham Act claim sounds in false designation of origin under section 1125(a), "which proscribes the behavior of 'passing off' or 'palming off'" that "'occurs when a producer misrepresents his own goods or services as someone else's.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (affirming summary judgment for defendant in "passing off" claim under 15 U.S.C. § 1125(a)) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003)). "To establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant **made unauthorized use of it** 'such that consumers were likely to confuse the two.'" *Id.* (quoting *Lone Star*

*Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)) (emphasis added).

Implicit in the second prong of this test is the requirement that an allegedly infringing defendant actually "use" a plaintiff's protected mark or one confusingly similar to it. *Id.* at 648 (instructing courts to consider under the second prong "the similarity of the marks (based on the overall impressions that the marks create, including the sound, appearance, and manner in which they are used)"); *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (identifying a defendant's use of a mark as an element of a section 1125(a)(1) claim). Indeed, actionable conduct under section 1125(a)(1) is limited to a defendant's "**use[] in commerce**" of a "word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact." 15 U.S.C. § 1125(a)(1) (emphasis added).[3] "[U]se in commerce" is defined in relevant part by the Lanham Act Act as:

> the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when—

---

[3] In full, section 1125(a)(1) provides as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.'

15 U.S.C. § 1125(a)(1).

> (A) it is **placed** in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce,

15 U.S.C. § 1127 (emphasis added).

Thus, in "passing off" claims, like those pursued by Flexstake here, a defendant "uses" a mark if it "places" that mark on a good to pass it off as emanating from or authorized by the infringed-upon plaintiff. 15 U.S.C. § 1127; *1-800 Contacts, Inc.*, 414 F.3d at 408; *Geovision, Inc. v. Geovision Corp.*, 928 F.2d 387, 389 (11th Cir. 1991) ("The plain meaning of § 1127 requires that the mark be placed on the product (or on the associated documents if the nature of the product makes that impracticable) and that the product be sold or transported in commerce"). Under that framework, DBI, as the moving party, must show that there is no dispute of material fact that it did not "place" the Flexstake mark or one confusingly similar to it on the Generic Posts. It has.

The record is undisputed that the Generic Posts installed on I-95 did not contain any markings, logos or words indicating Flexstake manufactured them. (ECF Nos. 103, 106 at ¶¶ 12); (ECF No. 102-1 at 90:11-17). Based on that fact, no reasonable juror could find that DBI "placed" the Flexstake mark or a confusingly similar one on the Generic Posts and, therefore, DBI did not "use" such a mark as a matter of law. 15 U.S.C. §§ 1125(a)(1), 1127; *1-800 Contacts, Inc.*, 414 F.3d at 408; *Geovision, Inc.*, 928 F.2d 387, 389 (11th Cir. 1991).

Flexstake cites a number of out of circuit cases that it claims to have extended liability under section 1125(a)(1) to where a defendant made no affirmative misrepresentation of origin as to the manufacturer of a product and consumer confusion was likely. (ECF No. 107 at pp. 15-17.) None of those cases actually support that proposition and the Court is not persuaded in any event.

In *Taylor Made Golf Co., Inc. v. MJT Consulting Group, LLC*, the defendants procured defective discarded Taylor Made golf club heads, installed its own shafts and grips, and resold them as genuine new Taylor Made clubs. 265 F. Supp. 2d 732, 734-37 (N.D. Tex. 2003). The defendants were not authorized distributors of Taylor Made products and advertised in a local newspaper to the consuming public that they were selling genuine Taylor Made golf clubs. *Id.* at 735. *Taylor Made* is inapposite because, in that case, the defendants affirmatively and falsely advertised that they sold genuine Taylor Made golf clubs. Here, DBI did not obtain Flexstake parts without consent and then cobble together those parts with the Generic Posts to create a product that it later falsely marketed and sold as a genuine Flexstake. Far from that, DBI merely

used unmarked Generic Posts to maintain a previously purchased Flexstake Delineator.

In *General Electric Co. v. Speicher*, a third-party car manufacturer contracted the defendant to supply General Electric ("GE") Carboloy 570 "inserts." 877 F.2d 531, 532-33 (7th Cir. 1989). Instead of supplying actual GE Carboloy 570 inserts, the defendant manufactured generic inserts, etched "570" on each insert, and packaged and shipped the products in genuine GE boxes stamped with the number "570." *Id.* at 533. Judge Posner held that that conduct infringed on the "GE" and "570" marks and that the defendant was liable under section 1125(a). *Id.* at 533-34. Unlike *Speicher,* DBI did not place the Flexstake mark on the Generic Posts and then sell those posts as genuine Flexstake products. That case thus does not inform the Court.

Flexstake's other cases are cited for propositions relating trademark counterfeiting—a claim not asserted here—and thus have no bearing on this case. *See Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 900 (9th Cir. 1997); *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 827 (5th Cir. 1998).

The Court is unaware of any authority imposing liability under section 1125(a) against a defendant for using an unmarked, generic replacement part to simply service and maintain an existing product, as DBI is alleged to have done here. The precedent of this Circuit appears to explain why:

> Unfair competition goes to the question of marketing, not to the question of manufacture. One may be perfectly within his legal rights in producing an item and yet well without them in his method of selling it if he markets his own item in such a way that there is likely confusion as to the source of manufacture. . . . An unpatented part of a patented machine, which is to be used for replacement purposes, may be copied. If the specifications or drawings are incorrect, then we should assume that the copyist would not last long in his business. But absent any other factors, the copying of an unprotected part for replacement purposes, whether done correctly or not, is not litigable by the originator, so long as there is no 'palming off' as to source.

*B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1263 (5th Cir. 1971) (citations omitted).[4]

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

No such "palming" or "passing" off occurred here where the undisputed facts establish that the Generic Posts did not contain and, thus, DBI did not "use," Flexstake's mark or one confusingly similar to it. Accordingly, DBI is entitled to summary judgment on Counts II and III.[5]

## 4. Conclusion

In sum, the Court **grants** the Motion (ECF No. 104) and enters summary judgment for DBI on all claims asserted in the Amended Complaint (ECF No. 30). Flexstake's motion for leave to file sur-reply brief and supporting evidentiary materials (ECF No. 113) seeks to supplement the evidentiary record on facts immaterial to this opinion and is therefore **denied as moot.** All other pending motions are **denied as moot**. The calendar call set for December 4, 2018 at 9:00 a.m. is **cancelled**. The **Clerk** is directed to **close** this case.

**Done and ordered**, at Miami, Florida, on November 30, 2018.

```
_____
Robert N. Scola, Jr.
United States District Judge
```

---

[5] DBI is also entitled to summary judgment on Count I, the FDUTPA claim, on this basis. *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("The legal standards we apply to the FDUTPA claim are the same as those we have applied under section [1125](a) of the Lanham Act.") (alterations omitted; quoting *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011)).